

RECEIVED

FEB 0 7 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY _____

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus                         CRIMINAL NO. 09-0207-01
                                      JUDGE TOM STAGG

SCHMANISKY V. BROADWAY

### MEMORANDUM RULING

Before the court is Schmanisky V. Broadway's ("Broadway") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. See Record Document 79. Based on the following, Broadway's motion is **DENIED**.

### I. BACKGROUND

**A.**    **Factual Background.**

In late June of 2009, law enforcement agents learned, through a confidential informant ("CI"), that Broadway, along with some of his associates, had been involved in home invasion robberies. An agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the CI created a false story wherein the ATF agent would be a drug courier who came to Shreveport monthly to pick up a large quantity of cocaine from a stash house. According to the story, this drug courier was looking for someone who would rob the stash house because he was not happy with the way he had been paid in the past. See Record Document 84 at 12.

The undercover agent told the CI to convey this information to Broadway. In early August after a series of phone calls, the undercover agent met Broadway and one of his associates and discussed this story. Broadway told the agent that he had a crew that had done this sort of thing several other times and knew what they were doing. See id. at 13. Broadway also told the agent that in this type of robbery, "it's good to go ahead and shoot one as you come in the door to let them know that you mean business." Id. at 14. His exact words to the agent were: "You got to burn the first guy to let the other ones know that you mean business." Id.

Broadway and two associates met with the agent a second time. The agent, again, went through the cover story. The agent asked all three if they were sure they wanted to go through with the plan. The three acknowledged that they understood what was being planned and were all in agreement to commit the robbery. See id. at 15-16. Broadway told the agent that the three of them had already planned the robbery and were ready whenever the agent got the call to pick up the narcotics. He also told the agent that his two associates were "strapped," meaning they were presently armed. At the next meeting, Broadway brought an additional associate to the group, and all agreed to participate. See id. at 16-17.

On the day of the arrest, Broadway began calling the agent at 3:30 a.m., stressing the point that the group was ready. Broadway was acting very anxious and was ready to carry out the robbery. He told the agent he and his crew had been up all

night and were ready to do the job.  See id. at 17-18.   Shortly after noon on August

6, 2009, Broadway and his crew met with the agent in a parking lot located south of

the Municipal Auditorium in Shreveport.  See id. at 18.  Broadway and his crew had

two plastic shopping bags containing dark clothing, three loaded handguns and a roll

of duct tape.  After a short conversation between the agent and the crew, a signal was

given and all of the participants were arrested.  See id. at 21.

**B.**    **Procedural Background.**

On August 27, 2009, a federal grand jury returned a six-count indictment

against Broadway and three co-defendants.  Broadway was charged in count one of

the indictment with conspiring to possess with the intent to distribute five kilograms

and more of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(A), and 846.  Count two charged him with attempting to possess with

the intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C.

§§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2.  He was charged in count three with

possession of firearms in relation to drug trafficking crimes and aiding and abetting

possession and carrying of said firearms, in violation of 18 U.S.C. §§ 924 (c)(1) and

2.  Count four charged Broadway with being a felon in possession of firearms, and

aiding and abetting the possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1)

and 2.  Count five charged him with being a felon in possession of firearms and an

armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), and count

six charged him with forfeiture pursuant to 18 U.S.C. § 924(d)(1).  See Record Documents 14 and 15.

   On October 2, 2009, the government filed a Notice of Prior Narcotics Conviction pursuant to 21 U.S.C. § 851, alleging a Louisiana conviction for a felony drug offense in 2006 which would enhance Broadway's sentence to a twenty year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(A). See Record Document 47. On October 22, 2009, Broadway pleaded guilty to counts one and three of the indictment.  See Record Document 55.  Broadway acknowledged in his plea agreement that pursuant to the Notice of Prior Narcotics Conviction filed by the government, his sentence for count one of the indictment would be increased to a mandatory minimum of twenty years and his sentence for count three of the indictment would be not less than five years to be served consecutively to any sentence imposed on count one. See Record Document 56.

   On January 29, 2010, Broadway was sentenced to the mandatory minimum of two hundred forty months as to count one and sixty months as to count three to run consecutively. See Record Document 77.  Broadway timely filed his appeal of the conviction. See Record Document 80. On May 11, 2011, Broadway's conviction was affirmed by the United States Court of Appeals for the Fifth Circuit.  See Record Document 130. Thereafter, Broadway filed the instant motion. See Record Document 147.

4

## II.  LAW AND ANALYSIS

Broadway brings a multitude of claims alleging he received ineffective assistance of counsel in this section 2255 motion.   As a general rule, the review of a conviction pursuant to a section 2255 motion is limited to constitutional and jurisdictional questions.  See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998).   Ineffective assistance of counsel claims can be considered and should generally be raised in a collateral proceeding pursuant to 28 U.S.C. § 2255, rather than on direct appeal, as the record is not fully developed.  See United States v. Cornett, 195 F.3d 776, 781 n.2 (5th Cir. 1999).

To prevail on a claim of ineffective assistance of counsel, Broadway must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) his counsel's ineffective assistance was prejudicial.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The first prong of the Strickland analysis requires a showing by Broadway that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  The Fifth Circuit has described this standard as requiring that counsel "research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful."  United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000) (quotations and citation omitted).  In evaluating counsel's performance, the court is to presume that the attorney's actions are encompassed within the wide range

5

of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  Broadway may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066.

Under the second prong of the Strickland test, Broadway must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  To satisfy the prejudicial prong of the Strickland test, Broadway must establish that he would have received less time in prison. See United States v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004).[1]  If Broadway fails to establish either prong of the Strickland test, then his claim of ineffective assistance of counsel must fail.

---

[1]Previously, the prejudice test for ineffectiveness relating to the amount of a sentence in the Fifth Circuit was whether, but for counsel's actions, there was a reasonable probability that defendant would have received a "significantly less harsh" sentence.  The Supreme Court later determined in Glover v. United States, 531 U.S. 198, 203, 121 S. Ct. 696 (2001), that "any amount of actual jail time has Sixth Amendment significance."  Thus, the Fifth Circuit now holds that "Glover abrogates the significantly less harsh test, and that any additional time in prison has constitutional significance." Grammas, 376 F.3d at 438.

**A.     Pretrial Motions**.

Broadway alleges in his section 2255 motion that his counsel, Betty Marak ("Marak"), was ineffective for failing to file pretrial motions.  However, Broadway failed to outline which motions should have been filed.  He further alleges that Marak's failure to file a motion regarding statements the officer made on the stand regarding Broadway's statement of burning the "first guy to let the other ones know that you mean business" along with the failure to file other motions rendered his counsel ineffective.  Record Document 147 at 4.  Broadway is unable to meet the first prong of Strickland because he failed to set forth evidence showing that Marak's failure to file any pretrial motion was unreasonable.  Broadway contends that his counsel should have filed motions on his behalf but has not alleged any factual basis nor what motion Marak should have filed.  Defense counsel cannot be faulted for failing to raise a baseless objection.  See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a "frivolous" issue); Murray, 736 F.2d at 283 ("Counsel is not required to engage in the filing of futile motions.").

Similarly, Broadway is unable to meet the second prong of Strickland because he has failed to prove prejudice by demonstrating a reasonable probability that but for his attorney's failure to file such motions, the result would have been different.  See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  Accordingly, his contention that his

counsel was ineffective in the pretrial motion process fails.

**B.     Failure To Investigate.**

Broadway also asserts that Marak did not adequately investigate his case.  He contends that Marak failed to investigate a shooting which took place the day of his arrest, failed to investigate the officer who conducted the surveillance, failed to look further into who was the mastermind of the plot and to determine that the CI was in jail for extortion.  In <u>Strickland</u>, 466 U.S. at 691, 104 S. Ct. at 2066, the Supreme Court stated:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

"So long as counsel made an 'adequate investigation,' any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance."  <u>Smith v. Cockrell</u>, 311 F.3d 661, 668 (5th Cir. 2002) (citation omitted), <u>overruled on other grounds by</u> <u>Tennard v. Dretke</u>, 542 U.S. 274, 283, 124 S. Ct. 2562, 2569-2570 (2004).  In this case, Broadway points to nothing in the record to evidence his claim that an adequate investigation was not had.  However, even if his assertion is taken as true, Broadway must still demonstrate that his counsel's alleged failure resulted in prejudice to him.  See <u>Lockhart v. McCotter</u>, 782 F.2d 1275, 1282 (5th Cir. 1986).  Broadway has failed to do so.  He has not pointed

to any particular evidence or testimony which might have been gleaned from further investigation. Nor has he demonstrated that "there is a reasonable probability that, but for counsel's failure to investigate, the result of the proceeding would have been different." Murray, 736 F.2d at 282.

Broadway also alleges that he never suggested anyone be shot and he never possessed the guns. However, the record indicates that during the guilty plea hearing, Broadway acknowledged making the statement about the necessity to kill someone and also that he carried a gun. The following exchange between the court and Broadway took place during the guilty plea hearing:

Court:      Look at the other elements of the offense, a shorter version. In this one, it is involving Section 924. And I would tell the jury that this section makes it a crime for anyone during and in relation to a drug trafficking crime to use or carry a firearm or to possess a firearm in furtherance of a drug trafficking crime.

The elements are, first, that the defendant committed a drug trafficking crime. Conspiracy to distribute and possession of controlled substances with intent to distribute are drug trafficking crimes.

The Government wouldn't have any trouble proving the purpose for you having those guns in the back of that SUV, could they?

Broadway:  No, sir.

Court:      Second, that Mr. Broadway used or carried a firearm during a drug trafficking crime. The fact that in that shopping bag you were carrying, there were two pistols, they could prove

9

that to the jury, too, couldn't they?

Broadway:    Yes, sir.

Court:    They would bring the plastic bags in the courtroom and show them to the jury.  And I presume the jury would believe that that testimony actually happened.

Third, that the carrying or use of the firearm facilitated the defendant's commission of the drug trafficking crime, or possession of the firearm advanced the offense in some way.

Do you know what the jury would go away from here remembering, Mr. Broadway?  Testimony of the agent that you said that you burst into the house and you burned the first guy and that makes the rest of them behave.  The Government could prove that here's what you said, couldn't they?  If they believed that agent.

Broadway:    Yeah.  Yes, sir.

Record Document 84 at 25-28.

As indicated above, during the hearing, Broadway indicated that he did make the statement about the necessity to kill someone and that he carried a gun.  See id. Sworn statements in open court at guilty plea hearings "carry a strong presumption of verity."  United States v. Palmer, 456 F.3d 484, 491 (5th Cir. 2006) (citations and quotations omitted).  Broadway's arguments in his current motion are belied by the Rule 11 package presented during the hearing, signed by both Broadway and his counsel, and by his statements made during the guilty plea.  See United States v.

10

<u>Adam</u>, 296 F.3d 327, 333 (5th Cir. 2002); <u>United States v. Abreo</u>, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly). Because Broadway has failed to meet his burden of proof, his claims of ineffective assistance of counsel regarding the investigation must fail.

## C.   Guilty Plea.

Because Broadway's next claims of ineffective assistance of counsel are in the context of a guilty plea, Broadway must prove prejudice by demonstrating that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). However, Broadway has failed to meet this standard.

Broadway alleges a multitude of claims regarding Marak's performance during the guilty plea. Specifically, Broadway complains about his counsel's failure to: 1) explain to him the rights he was giving up by pleading guilty; 2) allow him to read the entire plea agreement; 3) object to testimony and to cross-examine the testifying agent; 4) tell him his fingerprints were not on a gun; and 5) make the court aware that Agent Alkire was not the surveillance officer and that the agent and CI set everything up. Broadway also alleges that Marak coerced him into signing the plea agreement. He further alleges she failed to alert the court that the CI provided the guns before the

arrest, there were three ongoing investigations, other participants were the targets of the investigations and not him, and that he was walking away at the time of the arrest.

The majority of Broadway's complaints revolve around the oral factual basis presented by the government during the guilty plea.   These complaints are not consistent with the sworn statements Broadway made to the court during his guilty plea hearing and are also contrary to his statements made in writing.

The court and Broadway had the following exchange regarding his guilty plea:

Court:       When I ask you about Officer Alkire's testimony, I asked you did he say anything that you disagreed with and you told me that he didn't say anything you disagreed with except the date question.   That's why I put my third question to you that way.  Do you understand?

Broadway:  (Nods head up and down.)

Record Document 84 at 27.

Despite his contentions, there is significant evidence to indicate that Broadway was fully informed at the time of his plea. The plea agreement, signed by both Broadway and his counsel, provided:

I have read this plea agreement and have discussed it with my attorney. I fully understand the plea agreement and accept and agree to it without reservation.   I do this voluntarily and of my own free will.  No threats have been made to me, nor am I under the influence of anything that would impede my ability to fully understand this plea agreement.

12

I affirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this plea agreement and the matters related to this case.

Record Document 56 at 4-5. The form entitled "Understanding Of Maximum Penalty And Constitutional Rights" signed by Broadway and his counsel at the time of the guilty plea provided:

I, SCHMANISKY V. BROADWAY, the above named defendant, having been furnished a copy of the charge and having discussed same with my attorney, state that, I understand the nature of the charge against me and the maximum possible penalty that may be imposed against me as set forth in the Plea Agreement.

. . .

I realize that by pleading guilty I stand convicted of the crimes charged and waive my privilege against self-incrimination, my right to jury trial, my right to confront and cross-examine witnesses, and my right of compulsory process.

I further state that my plea in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever (except the plea agreement) from anyone associated with the State or United States Government or my attorney and that the only reason I am pleading guilty is that I am in fact guilty as charged.

Id., Understanding of Maximum Penalty at 1-2.

13

In addition, before accepting Broadway's plea, the court went into great detail to explain to Broadway the elements of the offense.  See Record Document 84 at 24-27.  Also, when asked whether he had been satisfied with his lawyer's "legal advice she has provided for you," Broadway replied, "Yes, sir, I have."  Record Document 84 at 4.

Broadway is equally unable to demonstrate prejudice on this issue.  Broadway must again comply with Hill v. Lockhart's amendment to the Strickland criteria and prove prejudice by demonstrating that there is a "reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59, 106 S. Ct. at 370.  However, Broadway has failed to meet this standard.  There is significant evidence to indicate that Broadway was fully informed at the time of his plea.  Broadway cannot show prejudice in light of his affirmative statements in court and the court's specific admonitions to him.  At no point did Broadway refuse to plead guilty or express any objection when faced with this information.

Broadway has failed to overcome the presumption that his attorney's actions "are encompassed within the wide range of reasonable competence."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.  He has failed to set forth any evidence to show that his attorney's performance was "outside the wide range of professionally competent

14

assistance" or resulted in any prejudice to him. Id. at 690, 104 S. Ct. at 2066. Because Broadway has failed to meet his burden of proof, his claims of ineffective assistance of counsel during the plea process must also fail.

## C. Sentencing.

Broadway asserts several issues regarding Marak's representation during sentencing. All of these assertions are without merit. Broadway was sentenced to the statutory mandatory minimum of two hundred forty months imprisonment as to count one and sixty months as to count three, to run consecutively. His sentence is a mandatory statutory sentence dictated by 21 U.S.C. § 841(b)(1)(A). There is significant evidence to indicate that Broadway was fully informed at the time of his plea and at the sentencing hearing regarding the statutory mandatory minimum.

The plea agreement, signed by both Broadway and his counsel, provided:

> SCHMANISKY V. BROADWAY understands and agrees that:
>
> 1. the maximum punishment on Count 1 is a term of imprisonment of not less than 20 years nor more than Life, a fine of not more than $8,000,000, or both. . . .
>
> 2. the maximum punishment on Count 3 is a term of imprisonment of not less than 5 years. The Defendant understands that this sentence cannot be probated, and that his sentence shall run consecutively to any term of imprisonment imposed on Count 1.

Record Document 56 at 2 (emphasis in original).

Broadway has simply not met his burden, and therefore all of his claims of

ineffective assistance of counsel at sentencing must fail.

**D.    Appeal**.

Broadway also contends Marak was ineffective in her representation of him

during the appellate process.  He claims that his counsel was ineffective on appeal by

failing to "argue my whole case on my direct appeal."  Record Document 147 at 2.

"A criminal defendant has a constitutional right to receive effective assistance of

counsel on direct appeal."  Henderson v. Quarterman, 460 F.3d 654, 664 (5th Cir.

2006).  A claim of ineffective assistance of counsel based on the failure to argue an

issue on appeal is governed by the two-part Strickland test, requiring a determination

of whether:  (1) the attorney's performance was deficient, and (2) the deficiency

prejudiced the defendant.  See Roe v. Flores-Ortega, 528 U.S. 470, 476, 120 S. Ct.

1029, 1034 (2000) (citation omitted).  As with motions, counsel is not deficient for not

raising every non-frivolous issue on appeal.  See United States v. Williamson, 183

F.3d 458, 462 (5th Cir. 1999).  To be deficient, the decision not to raise an issue must

fall "below an objective standard of reasonableness."   Strickland, 466 U.S. at 688,

104 S. Ct. at 2064.  This reasonableness standard requires counsel

> to research relevant facts and law, or make an informed
> decision that certain avenues will not prove fruitful.  Solid,
> meritorious arguments based on directly controlling
> precedent should be discovered and brought to the court's

attention.

Williamson, 183 F.3d at 462-63 (citations omitted).

Broadway's guilty plea and his admissions during the guilty plea hearing removed any argument that he might have regarding Marak's representation during the appeal process.   Broadway pleaded guilty and he faced a statutory mandatory minimum sentence, making the issues that could be raised on appeal limited. Appellate counsel is not required to present patently frivolous arguments on appeal, or even to present all non-frivolous points that could have been raised.  See Williams v. Collins, 16 F.3d 626, 635 (5th Cir. 1994).  Thus, Broadway has not shown that his counsel was deficient for failing to raise any meritless issue on appeal.

**E.     Other Claims.**

Broadway has also raised a number of other claims based upon his attorney's ineffective assistance of counsel.  However, like those claims discussed above, none of these survive the test set forth in Strickland.  Ultimately, Broadway has failed to satisfy either prong of the Strickland test as to any of his claims.  As to cause, he has neglected to present any evidence to overcome the presumption that his attorney's actions were encompassed within the wide range of reasonable competence and fell under the ambit of strategy.   As to prejudice, he has presented no evidence establishing that his attorney's actions were so serious as to render the proceedings

unreliable and fundamentally unfair. Accordingly, all of Broadway's ineffective assistance claims are without merit.

### III. CONCLUSION

For the above cited reasons, Broadway's section 2255 motion (Record Document 147) is **DENIED.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this ___ 7th ___ day of February, 2013.



JUDGE TOM STAGG